IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MIGUEL SANCHEZ-RODRIGUEZ,

**Plaintiff,**

v.

CIVIL NO. 07-2237 (FAB)

AT&T WIRELESS,

**Defendant.**

OPINION AND ORDER[1]

BESOSA, District Judge.

Before the Court are the cross-motions for summary judgment filed by plaintiff and defendant pursuant to Federal Rule of Civil Procedure 56 ("Rule 56").  (Docket Nos. 26, 27 and 28.)

I.   PROCEDURAL HISTORY

On December 26, 2007, plaintiff Miguel Sanchez-Rodriguez ("Sanchez") filed a complaint against Cingular Wireless, alleging religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-2000e, Puerto Rico Law 80, P.R. Laws Ann. tit. 29 §§ 185a-185m, Puerto Rico Law 100, P.R. Laws Ann. tit. 29 § 146, Article 1802 of the Civil Code, Laws of P.R. Ann. tit. 31, § 5141, and the Constitution of Puerto Rico.  (Docket No. 1 at 8-9.)

---

[1] Margaret-Ann Scotti, a second-year student at Georgetown University Law Center, assisted in the preparation of this Opinion and Order.

On April 16, 2008, Sanchez filed an amended complaint changing the name of the defendant to AT&T Wireless ("AT&T Wireless" or "the company") and alleging:  (1) religious discrimination in violation of Title VII; (2) religious discrimination in violation of Law 100; (3) retaliation for protected conduct in violation of Title VII; (4) discharge without just cause in violation of Law 80; (5) violation of Sanchez's "right to dignity and family privacy and honor" pursuant to Article II, Sections 1 and 8 of the Constitution of the Commonwealth of Puerto Rico; (6) and damages under article 1802 of the Civil Code.  (Docket No. 3 at 7-9.)

Finding no material factual issues between Sanchez and AT&T Wireless's respective alleged facts, the Court urged the parties to file a joint motion submitting a stipulation of facts on which the Court would decide the case on summary judgment.  (Docket No. 16) The parties filed a Joint Stipulation of Facts on April 7, 2009. (Docket No. 23.)   AT&T Wireless and Sanchez then filed cross motions for summary judgment on April 30, 2009.  (Docket Nos. 26 and 27.)   AT&T Wireless also filed an opposition to Sanchez's motion for summary judgment on May 21, 2009.  (Docket No. 31.)

On June 1, 2009, citing Rule 56(f), Sanchez filed an "opposition" to his own previous motion for summary judgment, claiming that issues of material fact regarding the company's capability to accommodate the Sanchez warranted additional discovery.  (Docket No. 32.)  The Court denied Sanchez's request

for additional discovery and will proceed now to rule on the motions for summary judgment based on the submitted stipulation of facts, as previously agreed upon by the parties. (Docket No. 34.) See Sullivan v. City of Springfield, 561 F. 3d 7, 16 (1st Cir. 2009) (finding that plaintiffs waived claim that grant of summary judgment was premature because not only did they not make that argument, but "they affirmatively requested that the court resolve the case on the existing evidence [by filing a motion for summary judgment]").

## II. STIPULATION OF FACTS

Sanchez and AT&T Wireless stipulated the relevant facts. (Docket No. 23.) Most of the stipulated facts are restated here in order to provide context to the parties' claims.

Sanchez was hired by AT&T Wireless[2] sometime in March 2000 as an Installation Technician. (Docket No. 23 at ¶ 1.) Sometime in February 2001, Sanchez transferred to a Retail Sales Consultant position[3] in the Caguas-Cayey-Humacao-Fajardo sales region, where he would sell cellular telephones and accessories at service kiosks

---

[2] The defendant-employer has gone through several name changes during the time it employed Sanchez, and its current name is elusive. According to the stipulation of facts, Sanchez was hired by C.C.P.R. Services, Inc., and this company continues to be the "relevant legal entity" in this case. (Docket No. 23 at 1.) However, the defendant continued to file motions under the names "Cingular Wireless" or "AT&T Wireless." (See, e.g., Docket No. 31).

[3] The position's name had changed in April 2002 from Sales and Services Specialist. (Docket No. 23 at 1.)

located in shopping centers. Id. at ¶ 4. His yearly salary
between 2003 and 2006 ranged from $23,129.59 to $26,425.47. Id. at
¶ 8. Sanchez additionally earned commissions, which had decreased
each year, most markedly from 2004 to 2005 (a drop from $17,497.43
to 10,850.36).[4] Id.

During 2006 and 2007, AT&T Wireless staffed 300 Retail Sales
Consultants throughout Puerto Rico, including forty in the Humacao-
Caguas-Cayey-Fajardo region. Id. at ¶ 9. Between September 2006
and June 2007, AT&T Wireless had hired over 53 Retail Sales
Consultants, 30 as full-time employees. Id. at ¶ 10. These new
hires included ten Retail Sales Consultants, five of them as full-
time employees, for the Humacao-Caguas-Cayey-Fajardo region. Id.

In September 2006, Sanchez informed his supervisors and Human
Resources that he had become a Seventh Day Adventist and needed a
reasonable accommodation in his work schedule to be able to meet
his religious obligations, namely abstain from work on Saturdays
and attend Sabbath services. Id. at ¶ 13. In October 2006,
Sanchez presented a letter from his church, confirming and
explaining his religious observance of the Sabbath. Id. at ¶ 15.
On approximately November 21, 2006, the company's Human Resources

---

[4] Sanchez's yearly salaries from 2003 to 2006 are as follows:
$23,129.59, $22,911.55, $26,425.47, and $25,312.00. His yearly
commissions from 2003 to 2006 are as follows: $18,938.71,
$17,497.43, $10,850.36, and $10,635.03. From January to June 2007,
Sanchez earned a salary of $15,052.66 and commission of $3,500.67.
(Docket No. 23 at ¶ 8.)

Department sent Sanchez a letter stating that his position necessitated that he work on rotating Saturday shifts, and that it would be a hardship on AT&T Wireless to grant Sanchez his requested accommodation. Id. at ¶ 16.

Instead, on November 21, 2006, Sanchez was offered two positions that would not require Sanchez to work on Saturdays: Representative 1 for Customer Services ("Rep 1") and Business Sales Specialist. Id. at ¶¶ 16, 18. The Rep 1 position typically required Saturday hours, but it would not be a hardship for the company to allow him Saturdays off. Id. at ¶ 16. The Business Sales Specialist positions did not require work on Saturdays or Sundays. Id. at ¶ 18. The wages for Rep 1 and Business Sales Specialists were $23,088.00 and $22,970.00, respectively. Id. at ¶ 16. Sanchez declined these offers because neither position earned commissions, and thus his income would significantly decrease. Id. at ¶¶ 17-19.

From December 2006 until June 2007, Sanchez applied for three other positions at AT&T Wireless, two in Puerto Rico and one in Worcester, Massachusetts, but he was not selected to be interviewed for any of them. Id. at ¶ 20. In February 2007, Sanchez presented another letter from his church confirming his observance of the Sabbath, and he filed a charge with the EEOC office in San Juan, Puerto Rico alleging religious discrimination. Id. at ¶¶ 21-22.

On approximately April 5, 2007, the HR Director sent Sanchez a letter acknowledging that Sanchez had declined the two positions that AT&T Wireless offered because of the reduction in salary that those positions included.  Id. at ¶ 23.  She also pointed out that Sanchez had continued to miss work on Saturdays, but no adverse disciplinary action was taken for having violated the attendance policy.  Id.  She reiterated that working on Saturdays on a rotational schedule was "an essential function" of Sanchez's position, and it was important for AT&T Wireless to maintain this scheduling system to avoid burdening other employees with more than their share of Saturday shifts.  Id.  The company, therefore, made two decisions.  First, the company would start disciplining Sanchez for any additional Saturdays missed.  Id.  Second, to continue to try to accommodate Sanchez, the company would allow him to swap shifts with co-workers who voluntarily agreed to it.  Id.  The company agreed to assist Sanchez by allowing him to advertise his need to swap schedules and by providing him with employees' schedules.  Id.  The company would allow this arrangement for a two-month trial period, after which the company would meet with him to determine what further measures were needed to accommodate him. Id.

In March 2007, Sanchez informed his supervisor that he could not find co-workers who were willing to swap shifts, and thus, he was forced to violate attendance policy on Saturdays.  Id. at ¶ 24.

His supervisor notified HR of this difficulty in March 2007, and Sanchez personally informed HR in May 2007.  Id. at ¶¶ 25-26.

Nevertheless, in May 2007, Sanchez's supervisor informed Sanchez that he was being placed on active disciplinary status. Id. at ¶ 28.  She also warned him that further measures, including termination, would be taken if he continued to miss work on Saturdays.  Id.  In that same month, his supervisor sent Sanchez eight emails, advising him that his sales quotas were below expectations.  Id. at ¶ 29.

In June 2007, HR emailed Sanchez, again informing him that his absences would be subject to attendance policy.  Id. at ¶ 30.  In that same month, he was asked to meet again with HR to discuss his absenteeism.[5]  Id. at ¶ 31.  Finally, on June 20, 2007, Sanchez tendered his letter of resignation, stating, "An opportunity had showed up I [sic] which I can have the Saturday[;] in addition it represent[s] an opportunity for my professional growth."  Id. at ¶ 32.

## III. PARTIES' RESPECTIVE ARGUMENTS FOR SUMMARY JUDGMENT

According to Sanchez, AT&T Wireless discriminated against him with respect to his religion in violation of Title VII.

First, Sanchez alleges that AT&T Wireless did not offer him reasonable accommodations for his religious practice.  (Docket 27

---

[5] The record does not indicate if this meeting ever took place.

at 22-27.)  According to Sanchez, AT&T Wireless offered him entry-level[6] positions that did not include the opportunity to earn commissions, resulting in at least a fifteen thousand dollar reduction in his income. (Docket No. 27 at 22.)  AT&T Wireless's other accommodation – allowing Sanchez to swap shifts with employees who voluntarily agreed to it – was also unreasonable because he did not always find willing volunteers to swap shifts with him and, after he used all his paid leave, the religious conflict remained. (Docket No. 27 at 24.)

Second, Sanchez claims that AT&T Wireless did not demonstrate that giving Sanchez Saturdays off while letting him keep his current position would have been an undue burden on the company, particularly given that AT&T Wireless has 300 Retail Sales Consultants throughout Puerto Rico.  (Docket No. 27 at 22.)  Sanchez also alleges that, in violation of Title VII, AT&T Wireless retaliated against him for filing a complaint with the EEOC office by continuing to assign him work on the Sabbath and rejecting him for the other positions to which he applied.  (Docket No. 27 at 23.)

AT&T Wireless conversely argues that Sanchez has not established a *prima facie* case for religious discrimination because

---

[6] The stipulation of facts (Docket No. 23) does not specify that these positions were entry-level, so the Court will not consider this fact when it determines whether AT&T Wireless offered Sanchez a reasonable accommodation pursuant to Title VII.

the company had taken no adverse employment action against him;
that the company engaged in an interactive process and offered
Sanchez "several reasonable accommodations" that would have allowed
him Saturdays off; and that Sanchez's desired accommodation would
have resulted in undue hardship, because it would have disrupted
the company's neutral scheduling system and imposed extra Saturday
shifts on other employees.  (Docket No. 31 at 6-12.)  AT&T Wireless
also denies that it retaliated against Sanchez for filing an EEOC
complaint against the company.  Id. at 12-17.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the
discovery, and disclosure of materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to a judgment as a matter of law."
Fed.R.Civ.P. 56.  A genuine factual issue is "one that a reasonable
decision-maker could decide [the case] in favor of either party."
Puerto Rico Aqueduct and Sewer Authority v. U.S. E.P.A., 35 F.3d
600 (1st Cir. 1994) (citing Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248-49 (1986)).  When parties present cross-motions for
summary judgment, a court should "consider each motion separately,
drawing inferences against each movant in turn."  Reich v. John
Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997).  A court "may
affirm a grant of summary judgment on any ground supported by the
record."  Hoyos v. Telecorp Comm's, Inc., 488 F.3d 1 (1st Cir.

2007) (citing <u>Estades-Negroni v. Assocs. Corp. of N. Am.</u>, 377 F.3d 58, 62 (1st Cir. 2004)).  The parties in this case, however, have agreed to provide a joint stipulation of facts, upon which the Court will decide the present case.  (Docket No. 34.)  <u>See</u>, <u>e.g.</u>, <u>Reich</u>, 126 F.3d at 5 (upholding trial court's summary judgment decision that was based on a stipulation of facts submitted by the parties).  Stipulating facts for decision "allows the judge to decide any significant issues of material fact that he discovers." <u>Boston Five Cents Sav. Bank v. Secretary of Dept. of Housing</u>, 768 F.2d 5 (1st Cir. 1985).

## V.   TITLE VII ANALYSIS

### A.   RELIGIOUS DISCRIMINATION

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . religion."  42 U.S.C. § 2000e-2(a)(1).  The statute defines religion as "all aspects of religious observance and practice as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  Accordingly, once the employee demonstrates a *prima facie* case of religious discrimination, the burden shifts to the employer to demonstrate that he or she offered

a reasonable accommodation of the religious practice, or that a reasonable accommodation would cause the employer's business an undue burden.  E.E.O.C. v. Union Independiente de la Autoridad Aqueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2004).

### i.   *PRIMA FACIE* CASE FOR RELIGIOUS DISCRIMINATION

To establish a *prima facie* case of religious discrimination by an employer, the employee must demonstrate that "(1) a *bona fide* religious practice conflicts with an employment requirement; (2) that he or she brought the practice to the [employer's] attention; and (3) that the religious practice was the basis for an adverse employment decision."  Union Independiente, 279 F.3d at 55 (quoting EEOC v. United Parcel Serv., 94 F.3d 314, 317 (7th Cir. 1996)).  The burden on the employee to establish a *prima facie* case of discrimination is "not onerous, as only a small showing is required."  Mariani-Colon v. Department of Homeland Sec., 511 F.3d 216, 221-22 (1st Cir. 2007) (quoting Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003)).

In this case, AT&T Wireless does not dispute that Sanchez satisfies the first and second prongs of a *prima facie* showing of religious discrimination.  AT&T Wireless concedes that Sanchez is a Seventh Day Adventist, and that his abstention from work on Saturdays to observe the Sabbath is a *bona fide* religious practice.  Contra Union Independiente, 279 F.3d at 56-57

(Plaintiff's sincerity in his religious objection to union membership was an issue of material fact precluding summary judgment because his objections to union membership continually changed as the union tried to accommodate his religious beliefs). AT&T Wireless also acknowledges that Sanchez informed the company's HR office about his need for an accommodation for his Sabbath observance.  According to the stipulation of facts, "Sanchez presented a letter from his Church, certifying his religious beliefs, and explai[n]ing Sabbath observance." (Docket No. 23 at ¶ 15.)

Concerning the third prong of his *prima facie* case, however, AT&T Wireless denies that it took any adverse employment action against Sanchez due to his religious beliefs.  (Docket No. 31 at 5.)  The company argues that, in order to make a good faith effort at accommodating him, it did not discipline him for the several violations of attendance policy that Sanchez committed between September 2006 and April 2007, but that eventually the company had "no other alternative but to place [Sanchez] on active disciplinary status."  Id.[7]  Sanchez does not point out which of AT&T Wireless's actions constituted adverse employment actions, but

_____

[7] AT&T Wireless apparently assumes that an employment action is not adverse if the employer did not have a discriminatory motive or if the employer had attempted to accommodate the employee.  AT&T Wireless seems to conflate the two distinct parts of the religious discrimination burden-shifting framework.  See generally, Union Independiente, 279 F.3d at 55 (describing the burden-shifting framework for adjudicating a religious discrimination claim).

the parties stipulate that Sanchez received the following from the company:  placement on active disciplinary status, emails from his supervisor warning him that his sales quotas were below expectations, and threats from HR that further discipline, including termination, would be forthcoming if he continued to miss his Saturday shifts.  (Docket No. 23 at ¶ 28-29.)

    An adverse employment action under Title VII must be an action that "materially change[s] the conditions of plaintiffs' employ." Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002) (citing Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996).  These actions "typically involve . . . discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Morales-Vallellanes v. Potter, 605 F.3d 27 (1st Cir. 2010) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).  Any materially adverse change, however, "must be more disruptive than a mere inconvenience or alteration of job responsibilities." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002). Whether an employment action is materially adverse "is an objective test and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 472

(1st Cir. 2010) (quoting <u>Burlington N. and Santa Fe Ry Co., v.</u>
<u>White</u>, 548 U.S. 53, 71 (2006)).

       The First Circuit Court of Appeals has decided cases
regarding whether disciplinary letters or admonishments constitute
an adverse employment action under Title VII.  <u>Compare</u> <u>Valentin-</u>
<u>Almeyda v. Municipality of Aguadilla</u>, 447 F.3d 85, 97 (1st Cir.
2006) (finding that "a document about an alleged disciplinary
problem" and an "admonishment letter" were both adverse employment
actions) <u>and</u> <u>Calero-Cerezo v. U.S. Dept. of Justice</u>, 355 F.3d 6, 25
(1st Cir. 2004) (finding that a "memorandum of admondishment"
constituted an adverse employment action) <u>with</u> <u>Hernandez-Torres v.</u>
<u>Intercontinental Trading, Inc.</u>, 158 F.3d 43, 47 (1st Cir. 1998)
(finding that a single admonition that an employee complete his
work within an eight hour period "or else" did not constitute an
adverse action because the employee, who continued to receive
favorable performance reviews, was likely singled out "in a
laudatory fashion" for being the only employee to receive overtime
pay).  <u>See also</u> <u>Marrero v. Goya of P.R.</u>, 304 F.3d 7, 23-24 (1st
Cir. 2002) (noting that monetary effect is not necessary for an
action to be materially adverse as long as the action is "equally
adverse").

       Sanchez's placement on active disciplinary status,
coupled with warnings of further discipline, including termination
(Docket No. 23 at ¶ 28), have a comparable disciplinary purpose to

letters of admonishment, but are likely more severe.  The record
does not describe what happens when one is placed on active
disciplinary status; AT&T Wireless did not inflict this
disciplinary measure, however, until approximately seven months
after Sanchez had begun to miss his scheduled Saturdays, suggesting
that the action taken by the company was significant.  It is thus
evident that the "material change in employment" resulting from
letters of admonishment was also accomplished in this case by AT&T
Wireless's disciplinary measures.  Thus, AT&T Wireless had taken
adverse employment actions against Sanchez.

  **ii.  REASONABLE ACCOMMODATION**

   Once AT&T Wireless was aware of Sanchez's religious
conflict, it was required to offer Sanchez a reasonable
accommodation for his observance of the Sabbath, unless any
reasonable accommodation would have imposed an undue hardship on
the company.  <u>Union Independiente</u>, 279 F.3d at 55. Title VII's
requirement for a reasonable accommodation "is an effort to
reconcile conflicts between religious practices and business
concerns." <u>Cloutier v. Costco Wholesale, Corp.</u>, 390 F.3d 126, 134
(1st. Cir. 2004).  The employer need only accommodate an employee's
religious practice "within reasonable limits." <u>Union
Independiente</u>, 279 F.3d 49, 55 (1st Cir. 2002).  There is no clear
threshold for what constitutes a reasonable accommodation for a

religious practice.[8]  It is clear, however, that the employer needs
to offer only one reasonable accommodation to satisfy its Title VII
obligation, despite the employee's preferences.  Ansonia Bd. of
Educ. v. Philbrook, 479 U.S. 60, 68 (1986).  ("Where the employer
has already reasonably accommodated the employee's religious needs,
the statutory inquiry is at an end.")  Based on the stipulation of
facts, AT&T Wireless offered Sanchez two main accommodations, which
will be addressed separately.

> **a.   Job Transfers**

In view of Title VII's prohibition against
religious discrimination and its definition of religion,[9]  a
reasonable accommodation may require that a company "reasonably

---

[8] The First Circuit Court of Appeals has not yet directly
addressed questions of reasonable accommodation of religious
practice under Title VII.  Its religious discrimination cases have
been decided on other grounds.  See Cloutier v. Costco Wholesale,
Corp., 390 F.3d 126 (1st. Cir. 2004) (abstaining from analyzing
employer's proposed accommodation and finding that reasonably
accommodating employee's religious practice would have constituted
an undue burden on the employer); E.E.O.C. v. Union Independiente
de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279
F.3d 49 (1st Cir. 2002) (finding a material question of fact
regarding the sincerity of the employee's religious beliefs,
precluding summary judgment).

[9] Title VII makes it unlawful for an employer to "discriminate
against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of . . .
religion."  42 U.S.C. § 2000e-2(a)(1).  Title VII defines religion
as "all aspects of religious observance and practice, as well as
belief, unless an employer demonstrates that he is unable to
reasonably accommodate to an employee's or prospective employee's
religious observance or practice without undue hardship on the
conduct of the employer's business."  42 U.S.C. § 2000e(j).

preserve that employee's employment status, *i.e.*, compensation, terms, conditions, or privileges of employment." Am. Postal Workers Union, San Francisco Local v. Postmaster General, 781 F.2d 772, 776 (9th Cir. 1986). Other circuits have expressed similar views. See, e.g., Cosme v. Henderson, 287 F.3d 152, 160 (2d Cir. 2002) (finding that "an accommodation might be unreasonable if it caused [the employee] to suffer an inexplicable diminution in his employee status or benefits"). But see Bruff v. N. Miss. Health Serv. Inc., 244 F.3d 495 (5th Cir. 2001) (finding that "a significant reduction in salary alone . . . does not make the accommodation unreasonable"); Pinsker v. Joint Dist. No. 28J of Adams and Arapahoe Counties, 735 F.2d 388, 390-91 (10th Cir. 1984)(concluding that Title VII does not require an employer to accommodate religious practices "in a way that spares the employee any cost whatsoever").

        The Supreme Court has provided guidance on this topic; it has held that allowing an employee to take unpaid leave for a religious practice is a reasonable accommodation because "it is merely a loss of income for the period the employee is not at work," which "has no direct effect upon either employment opportunities or job status." Ansonia, 479 U.S. at 70-71. Based on its independent review of Title VII's statutory provisions and existing case law, this Court finds reasonable preservation of compensation to be a significant aspect of a reasonable

accommodation.  See id.; Am. Postal Workers Union, 781 F.2d 772, 776; 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1).

AT&T Wireless offered Sanchez the Rep 1 and Business Sales Specialist positions, both of which did not require Sanchez to work on Saturdays.  (Docket No. 23 at ¶ 16.)  The wages for Rep 1 and Business Sales Specialists, however, were $23,088.00 and $22,970.00, respectively, with no opportunity to earn commissions.  Id.  Taking these positions would constitute an approximately $15,000 reduction in earnings.  (Docket No. 23 at ¶ 18.)

Title VII and the Supreme Court support the finding that the reasonable preservation of employment status is paramount to a reasonable accommodation, and that reasonably preserving compensation is a significant aspect to reasonably preserving employment status.  This Court, thus, cannot conclude that the positions offered by AT&T Wireless to Sanchez were reasonable accommodations as a matter of law, because these positions offered a steep decrease in earnings.

**b.   Voluntary Shift Swaps**

While the job transfers were not reasonable accommodations, AT&T Wireless also allowed Sanchez to swap shifts with other retail sales consultants who voluntarily agreed to do so.  (Docket No. 23 at ¶ 23.)  The company also agreed to provide him with the work schedules of other employees and to allow him to

advertise his need.  <u>Id</u>.  Sanchez, however, notified his supervisor
and HR that his co-workers would not agree to swap shifts with him,
and thus, he was forced to miss his Saturday shifts in violation of
the attendance policy.  (Docket No. 23 at ¶¶ 24, 26.)

        Several courts have interpreted the Supreme
Court's decision in <u>Trans World Airlines v. Hardison</u>, 432 U.S. 63
(1977), to hold that allowing an employee to swap shifts with other
employees to resolve a religious conflict constitutes a reasonable
accommodation, even if finding an alternate shift was not always
successful.  <u>See</u>, <u>e.g.</u>, <u>Sturgill v. United Parcel Service, Inc.</u>,
512 F.3d 1024 (8th Cir. 2008) (finding that allowing shift swaps
was a reasonable accommodation even though it did not eliminate
every possible instance in which the Seventh Day Adventist might be
scheduled to work on the Sabbath); <u>Beadle v. Hillsborough County
Sheriff's Dep't.</u>, 29 F.3d 589 (11th Cir. 1994) (finding that
allowing shift swaps to avoid working on the Sabbath was a
reasonable accommodation even though employee was successful in
swapping shifts on only two occasions); <u>Miller v. Drennon</u>, 966 F.2d
1443, 4 (4th Cir. 1992) (finding that allowing an employee to swap
shifts was a reasonable accommodation even though employees were
not always willing to swap shifts because the employer was not
required to provide an "absolute" accommodation); <u>Brener v.
Diagnostic Center Hosp.</u>, 671 F.2d 141 (5th Cir. 1982) (same).

Conversely, the Sixth Circuit Court of Appeals has held that allowing employees to swap shifts on a voluntarily basis "does not definitively constitute 'reasonable accommodation' as a matter of law in all cases." E.E.O.C. v. Robert Bosch Corp., 169 Fed. Appx. 942, 944 (6th Cir. 2006).  The cases in which the Sixth Circuit Court of Appeals found that allowing shift swaps did not constitute a reasonable accommodation, however, had additional factors besides the inconsistent willingness of workers to swap shifts that made the accommodation unreasonable.  For instance, in Smith v. Pyro Min. Co., 827 F.2d 1081 (6th Cir. 1987), the Sixth Circuit Court of Appeals held that the employer's allowance of a Sabbath observer to swap shifts with co-workers who voluntarily agreed to it was an unreasonable accommodation of the employee's religious beliefs because the employee believed it was a sin to ask others to work on the Sabbath.  Similarly, in McGuire v. Gen. Motors Corp., 956 F.2d 607 (6th Cir. 1992), the Sixth Circuit Court of Appeals held that a jury question existed as to whether allowing shift swaps constituted a reasonable accommodation because the employer possibly compromised the willingness of employees to swap shifts with the employee.  Specifically, the employer distributed a survey to the other employees regarding their opinions of reasonably accommodating Sabbath observance.  Id. at 609.

This case does not contain similar additional factors regarding Sanchez's religion or the employer's actions

which might compromise the reasonableness of voluntary shift swaps
as an accommodation.   In fact, AT&T Wireless offered to provide
Sanchez the other employees' schedules and allowed him to advertise
his need on bulletin boards and other necessary means.   (Docket
No. 23 at ¶ 23.)   Sanchez's only obstacle was the willingness of
his other co-workers to work a Saturday shift.   This Court joins
the views of several circuits to find AT&T Wireless's allowance of
Sanchez to arrange voluntary shift swaps a reasonable accommodation
as a matter of law.

### iii. UNDUE HARDSHIP

"Where   the   employer   has   already   reasonably
accommodated the employee's religious needs, the statutory inquiry
is at an end."   Ansonia, 479 U.S. at 68.   Assuming *arguendo* that
AT&T Wireless did not reasonably accommodate Sanchez's observance
of the Sabbath, however, Sanchez avers that exempting him from the
Saturday rotation while allowing him to remain a Retail Sales
Consultant would not have unduly burdened AT&T Wireless because the
company has hundreds of Retail Sales Consultants staffed throughout
Puerto Rico, including forty in Sanchez's region of employment, who
could have worked the Saturday hours.   (Docket No. 27 at 22.)   AT&T
Wireless argues, however, that it would have been an undue hardship
to  compromise  its  neutral  scheduling  system  by  forcing  other
employees to work more than their share of Saturdays, a day with "a
high volume of activity," (Docket No. 23 at ¶ 7).   The fact that

Sanchez was unable to find employees with whom to swap shifts voluntarily evidences that Saturday shifts are unpopular, necessitating the company's neutral scheduling system. (Docket No. 31 at 10-11.)

"An accommodation constitutes an 'undue hardship' if it would impose more than a *de minimus* cost on the employer." Cloutier, 390 F.3d at 134-135 (citing Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977)). Hardship includes "both . . . economic costs, such as lost business or having to hire additional employees to accommodate a Sabbath observer, and . . . non-economic costs, such as *compromising the integrity of a seniority system*." Cloutier, 390 F.3d at 134 (emphasis added) (citing United States v. Bd. of Educ., 911 F.2d 882, 887 (3d Cir. 1990)).

The opinions of the First Circuit Court of Appeals and the Supreme Court strongly suggest that compromising a scheduling system that is meant to accommodate the shift preferences of employees would clear the *de minimus* threshold and constitute an undue hardship. The First Circuit Court of Appeals acknowledges the compromise of a seniority system as a non-economic cost that should be factored into the determination of undue hardship. Cloutier, 390 F.3d at 134. The Supreme Court in Hardison states clearly that "[i]t would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees . . . in

order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far." 432 U.S. at 81. While Hardison involved a seniority system, there is little indication that the Court's decision only applied to seniority systems. Numerous other courts have similarly applied Hardison to find that compromising a scheduling system constitutes an undue hardship; see, e.g., Weber v. Roadway Exp., Inc., 199 F.3d 270 (5th Cir. 2000) (finding that "[t]he mere possibility of an adverse impact on co-workers as a result of 'skipping over' [an employee in a scheduling system] is sufficient to constitute an undue hardship."); Chrysler Corp. v. Mann, 561 F.2d 1282 (8th Cir. 1977) (finding that an "[e]mployer should [not] have to adjust its entire work schedule to accommodate individual religious preferences and practices").

        Even though Sanchez contends that courts are "somewhat skeptical of hypothetical hardships," Cloutier, 390 F.3d at 135 (quoting Draper v. U.S. Pipe & Foundry Co., 527 F.2d 515, 520 (6th Cir. 1975), an employer can still demonstrate undue hardship without attempting a specific accommodation by "examining the specific hardships imposed by specific accommodation proposals," Id. (quoting Toledo v. Nobel-Sysco, Inc., 892 F.2d 1481, 1490 (10th Cir. 1989)). In this case, AT&T Wireless examined the specific hardships of exempting Sanchez from its neutral scheduling system. Saturday is not only a high activity day for

the company (Docket No. 23 at ¶ 7), but it is the day on which few
employees prefer to work, and the company has an interest in not
burdening its employees with a disproportionate number of Saturday
shifts.  (Docket No. 31 at 10-11.)  AT&T Wireless thus demonstrates
that Sanchez's proposed accommodation would have constituted a more
than *de minimus* burden on the company.

AT&T Wireless offered Sanchez a reasonable
accommodation for his religious obligation to abstain from work on
Saturdays by allowing him to swap shifts with his co-workers on a
voluntary basis.  Even if all of the company's offered
accommodations were unreasonable, AT&T Wireless has shown that
Sanchez's proposed accommodation to disrupt AT&T Wireless's neutral
scheduling system would have constituted an undue hardship for it.
Accordingly, Sanchez's claim of religious discrimination against
AT&T Wireless is **DISMISSED WITH PREJUDICE.**

### B.   RETALIATION

Sanchez also alleges that AT&T Wireless retaliated
against him for filing a charge of discrimination with the EEOC in
February 2007.  (Docket No. 27 at 25.)  Title VII prohibits
employers from "discriminat[ing] against any of [their] employees
. . . because [the employee] has made a charge, testified,
assisted, or participated in any manner in an investigation,
proceeding, or hearing."  42 U.S.C. §2000e-3(a).  To sustain a
retaliation claim, Sanchez must demonstrate that:  (1) he engaged

in protected conduct under Title VII; (2) he experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse employment action.  Gu v. Boston Police Dept., 312 F.3d 6 (1st Cir. 2002); see also White v. N.H. Dep't of Corr., 221 F.3d 254, 262 (1st Cir. 2000).  Once Sanchez establishes his *prima facie* case for retaliation, the burden shifts to AT&T Wireless to demonstrate that there was a non-discriminatory reason for the adverse employment action.  Douglas v. J.C. Penny Co., Inc., 474 F.3d 10, 14 (1st Cir. 2007).  If AT&T Wireless demonstrates such a reason, the burden returns to Sanchez to show that AT&T Wireless's non-discriminatory reason was pretext for discriminating against Sanchez.  Id.

        Establishing a *prima facie* case of retaliation is a "relatively light burden."  Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 224 (1st Cir. 2007).  Sanchez easily meets the first two prongs.  First, Sanchez did engage in a protected activity by filing a charge with the EEOC.  See, e.g., Mariani-Colon, 511 F.3d at 223 (recognizing that plaintiff "undoubtedly" engaged in a protected activity when he contacted the EEOC alleging discrimination).  Second, Sanchez has already demonstrated that he was the recipient of at least one adverse employment action, namely being placed on active disciplinary status and threatened with

further discipline.  (Docket No. 23 at ¶ 28; See supra p. 12-15 for

discussion on adverse employment action.)[10]

        At issue is whether Sanchez can satisfy the third prong

by demonstrating a causal connection between the protected activity

and the adverse employment action with the facts which the parties

have stipulated.  The only causal connection that Sanchez appears

to allege is temporal proximity between his filing an EEOC

complaint in February 2007 and the various instances of

"admonish[ment] by his superiors" thereafter until he resigned in

June 2007.  (Docket No. 27 at 25.)  According to the stipulated

facts, the earliest possible retaliatory action taken against

Sanchez was not more than one month later on March 1, 2007 when he

was denied an interview for an alternate position within AT&T.

(Docket No. 23 at  ¶ 20.)  The next action was a letter from the HR

Director sent on about April 5, 2007, stating that the company

would start disciplining him for not working on his scheduled

Saturday shifts.  (Docket No. 23 at  ¶ 23.)  Other alleged adverse

employment actions, such as placement on active disciplinary

---

        [10] The bar for adverse employment action is in fact lower in
the context of retaliation claims than in religious discrimination
claims.  Adverse employment action in the retaliation context "is
not limited to discriminatory actions that affect the terms and
conditions of employment."   Carmona-Rivera, 464 F.3d at 19-20
(quoting Burlington N. and Santa Fe Ry. Co. v. White, No. 05-259,
2006 WL 1698953 at *7 (U.S. June 22, 2006)).  Instead, the plaintiff
must show that the employment action might have "dissuaded a
reasonable worker from making or supporting a charge of
discrimination."  Id. at *10 (quoting Burlington N., 2006 WL
1698953 at *10).

status, emails regarding his unsatisfactory sales numbers, and
threats of further discipline, did not occur until May and June
2007. (Docket No. 23 at ¶ 28-30.) The First Circuit Court of
Appeals has noted the Supreme Court's statement that "[t]he cases
that accept mere temporal proximity between an employer's knowledge
of protected activity and an adverse employment action as
sufficient evidence of causality to establish a *prima facie* case
uniformly hold that the temporal proximity must be 'very close.'
Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir.
2004) (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268,
273-74 (2001) (citation omitted)). The month-long proximity
between Sanchez's filing of his claim and his rejection for
interview for another position within AT&T might satisfy a *prima
facie* case of retaliation because the burden is "not an onerous
one." See Calero-Cerezo, 355 F.3d at 26 (finding that the
plaintiff established a causal connection between the filing of her
EEOC complaint and receipt of a proposed suspension because the
temporal proximity was "roughly a month").

   While Sanchez satisfies the "light burden" of
establishing a *prima facie* case, AT&T Wireless satisfies its burden
of demonstrating that there were non-discriminatory reasons for the
adverse employment actions. With regard to the three positions for
which Sanchez applied, AT&T Wireless claims that he was not
selected to interview for those positions because the company "has

a legitimate business interest in hiring the best candidate for each available position." (Docket No. 31 at 14.) Regarding the "admonishment by his superiors" (Docket No. 27 at 25), the company only began disciplining him "after seven months of [Sanchez's] absenteeism and not meeting sales quotas," or three months after Sanchez filed his EEOC claim. (Docket No. 31 at 13; see also Docket No. 23 at ¶ 8 for Sanchez's earnings from commissions.)

          In turn, Sanchez offers little evidence to show that AT&T Wireless's non-discriminatory reasons were pretext for discriminating against him. With regard to the job rejections, Sanchez claims that the three jobs to which he applied were "similar or equal to his own," (Docket No. 27 at 26) although the record stipulates that the company decided that he did not meet the basic qualifications for one of the positions (Docket No. 23 at ¶ 20). Additionally, Sanchez does not state why he would have been entitled to those positions over other candidates.

          Regarding the disciplinary measures, Sanchez simply reiterates his claim that AT&T Wireless did not offer him reasonable accommodations and thus he continued to be disciplined for the inevitable religious conflict. (Docket No. 27 at 26.) Sanchez does not offer any evidence, however, that AT&T Wireless disciplined him "for the *purpose* of retaliating," which is required for Sanchez to defeat summary judgement. Randlett v. Shalala, 118 F.3d 857 (1st Cir. 1997). Just because Sanchez "was dissatisfied

with the extent of many of the early accommodations does not prove
a retaliatory intent on the part of [the employer]." Carmona-
Rivera v. Puerto Rico, 464 F.3d 14 (1st Cir. 2006). Additionally,
there is no evidence in the record that Sanchez was disciplined
more harshly that other employees who similarly violated attendance
policy. See, e.g., Kosereis v. Rhode Island, 331 F.3d 207 (1st
Cir. 2003) (finding that employee did not demonstrate
discriminatory pretext for his being disciplined for tardiness and
absences because other employees were similarly disciplined). In
fact, the record shows that AT&T Wireless attempted to accommodate
him by avoiding disciplining him until several months after the
religious conflict began. (Docket No. 23 at ¶ 23.) Because
Sanchez does not meet his burden to show that AT&T Wireless's non-
discriminatory reasons were pretext for discriminatory intent,
Sanchez's Title VII retaliation claim against AT&T Wireless is
**DISMISSED WITH PREJUDICE.**

**VI. CLAIMS UNDER PUERTO RICO LAW**

Plaintiff alleges claims pursuant to Law 80, Law 100, certain
articles of the Puerto Rico Constitution, and articles 1802 and
1803 of the Puerto Rico Civil Code. (Docket No. 1 at 8-9.)
Because no federal claims remain to ground supplemental
jurisdiction over local claims in this case, plaintiff's
supplemental claims pursuant to Puerto Rico Law are **DISMISSED
WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

**VII. CONCLUSION**

For the reasons described above, plaintiff's claims of religious discrimination and retaliation in violation of Title VII are **DISMISSED WITH PREJUDICE,** and plaintiff's Commonwealth claims are **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 5, 2010.

                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    UNITED STATES DISTRICT JUDGE